NONES, PLAINTIFF AND APPELLANT, v. HEIRS OF SERRALLÉS, DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2773.—Decided February 7, 1924.

EVIDENCE—AGENCY.—In order to prove that the defendant negotiated with a certain person as the agent of a corporation a letter was offered apparently written by the said corporation introducing the said person as its agent. *Held:* That as the said letter was received, accepted as authentic and acted on by the defendant it was admissible without further proof of authenticity.

ID.—ID.—COPY OF WRITING—SECONDARY EVIDENCE—DISCRETION OF COURT.—When a court exercises its discretion in admitting a copy of a writing which was not shown to have been lost or destroyed or to be out of the jurisdiction of the court, if the party objecting to its admission does not duly raise these questions and there are indications in the record that the said writing is in the possession of the adverse party or his predecessor in interest and out of the jurisdiction of the court, the Supreme Court will not interfere with the exercise of such discretion.

ID.—ID.—SELF-SERVING EVIDENCE.—A letter forming part of the correspondence containing the terms of a contract and written by one of the contracting parties can not be considered as a self-serving declaration for the effects of its admission in subsequent litigation between the same parties because it tends to support the theory of its writer.

ID.—CARBON COPIES.—Section 84 of the Law of Evidence does not indicate that it was the intention of the Legislature to exclude, in proper cases, carbon copies of letters not copied into a letter-book nor sent by mail, but delivered by the writer to the addressee or his agent.

The facts are stated in the opinion.

*Messrs. J. A. & A. S. Poventud* for the appellant.

*Mr. F. Parra Capó* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The complaint herein alleged among other things:

"2.—That, according to plaintiff's information and belief, on or about the fifth day of April, 1920, defendant gave an option—effective until 9 a. m. of April 9, 1920—to Louis Fally, of age, for the purchase of 5,000 bags, each containing 125 lbs. net, of washed sugar from said Mercedita Central, belonging to the defendant, at

the rate of $15 per quintal f. o. b. Ponce for shipment or delivery on or before April 30, 1920, payable upon delivery of shipping documents by the defendant, payment of said purchase price to be secured by a bank.

"3.—That on April 8, 1920, said Louis Fally, by Rafael Collazo, a Ponce commission agent, assigned his rights under the foregoing option or promise to plaintiff Adolfo Nones for the sum of $15.50 per quintal of sugar, and the last named, during the afternoon of the said 8th day of April, 1920, and prior to the expiration of the said option, accepted and communicated his acceptance of said option to the defendant by its said agent Giles, stating that the Banco Comercial de Puerto Rico had undertaken to secure the payment of the price fixed by the defendant, as indicated, whereupon the latter declared through Giles that the said option had expired and refused for that reason to carry out said contract, although in point of fact the said option of the defendant did not expire until the day following, April 9, 1920, at 9 a. m., as stated."

The answer, after denying these averments, set up affirmatively:

"That on or about March 26, 1920, Mauricio Fally, as the agent in Porto Rico of the Maxim Chemical Co. of New York, asked the defendant to quote him a price on 5,000 bags of washed sugar. Said defendant quoted him $13.50 per quintal f. o. b. Ponce and allowed him until March 31st to get a reply to the offer of the sugar to be made in the United States by the Maxim Chemical Co. or by Mauricio Fally in representation thereof. It was specially stipulated that at the same time the purchasers were to make a deposit of the value of the shipment in the Royal Bank of Canada in Ponce. Under such conditions the defendant was to assume charge of the shipment of sugar.

"This sale of five thousand bags of sugar was confirmed by a telegram from Mauricio Fally on March 31, 1920, which further ratified the fact that a credit had been opened in the Royal Bank of Canada in favor of the defendant as arranged. On April 1, 1920, that is, the day following, the Royal Bank of Canada in Ponce denied that it had any such open credit in favor of the defendant.

"On April 3, 1920, Mauricio Fally, personally and as representative of the Maxim Chemical Co., asked for an extension of the time allowed in the said contract for the lodging of funds in the Royal Bank of Canada, on the ground that they had made a bona

fide sale of said sugar to a firm in New Orleans and that the cable authorizing the credit had been sent two days before the expiration of the time set in the option, but had not been received until that same day of April 3rd.

"In such circumstances and in view of the special conditions of the business of the agent of the Maxim Chemical Co., Mauricio Falley, the defendant allowed him until the 7th day of April (exclusively and with no other object) to communicate with his purchasers in New Orleans, explaining the situation to them and asking for an increase in the amount of the credit to cover the price of $15 per quintal of the sugar sold, inasmuch as the market was rising rapidly.

"On the said 7th of April Louis Falley called on the defendant, claiming to be the representative of his brother, Mauricio Falley, and stating that he had exchanged cables with the New Orleans purchasers and expressing his fears that the answer with the credit asked for would not arrive in time.

"As a special favor the defendant allowed Louis Falley, as the representative of his brother, Mauricio Falley, as well as the latter himself, as representative of the The Maxim Chemical Co., until 9 a. m. of April 9, 1920, for the exclusive purpose of awaiting the receipt of the funds that the New Orleans firm purchasing the sugar had sent.

"The value of the sugar at the price agreed on not having arrived by 9 o'clock of the morning of April 9, 1920, the defendant considered the deal as broken and void."

From the record we take the following extracts:

"Defendant: I offer in evidence a letter from the Maxim Chemical Co. dated February 16, 1920, to the Succession of J. Serrallés, notifying the latter of the arrival in Porto Rico of its representative, Mauricio Fowler.

"Plaintiff: The plaintiff objects to the admission of this letter of February 16, 1920, as evidence for the defendant, first, because the signature of the Maxim Chemical Co. in this case has not been identified by any witness; second, because the illegible signature of the general manager who assumes to be authorized to sign in the name of the said corporation is not shown to have been previously sanctioned, nor is it proved that he holds the office he claims to be discharging in this letter; third, because, as is gathered from all the evidence of the defendant, the purpose of this evidence is to

show an alleged power of attorney or agency in Mauricio Fowler in favor of this corporation and powers of attorney are not proved in Porto Rico by statements or writings of the alleged principal, but of the agent; fourth, because it is a *res inter alius* act, that is, a transaction between the Chemical Co. and Mauricio Fowler, who is not the person that, according to the pleadings in this case, effected the deal in dispute; fifth, because it appears from the sworn answer of the defendant that the first transaction referred to in this letter endorsing Mauricio Fowler was a closed matter and as such has no material relation to nor connection with the following deal at $15 the quintal and capable of being terminated on April 9th, 1920, at 9 a. m.; sixth, because the said letter refers to hearsay statements of Maxim, which would never be admissible in evidence unless a deposition of the authorized officials of this company were taken in New York so that in any event they might aver what it is pertinent to show or what is sought to be proved by his hearsay statements, and depriving us of the constitutional right of cross-examination. And finally, since it is developed from the letter itself that such alleged power of attorney did not really exist; since the said letter simply refers to the obtaining of orders for them, and, as stated by Giles, undoubtedly relates to offers of Serrallés to purchase chemical products of the Maxim Chemical Co., which is what this concern sells, and which power of attorney, in any event, Mauricio Fowler would be able to produce at this time.

"Judge: The court admits it.

"Plaintiff: I take exception.

"Defendant: I offer in evidence a copy of the letter that the Succession of J. Serrallés addressed on April 1, 1920, through its manager, J. M. Giles, to Mauricio Fowler, acknowledging receipt of his telegram in which Fowler ratifies the purchase of the five thousand bags of sugar. I offer it as primary evidence of the contract entered into between the Central Serrallés and the Chemical Company in regard to that sugar.

"Plaintiff: The plaintiff objects to the admission of this letter of April 1, 1920, addressed by the defendant itself to Mauricio Fowler, San Juan, Porto Rico. First: Because it is self-serving evidence or evidence of the defendant itself in connection with the same subject matter. Second: Because it has not been shown that it is in answer to any telegram as affirmed in this letter and because in any event said telegram, which in any event would contain the conditions of the real contract to which the letter refers, should

have been produced or shown to have been mislaid, instead of attempting to insert them in this letter, which is written by the defendant. Third: Because it treats of. the first deal of 5,000 bags of sugar at $13.50 the quintal, which deal was consummated and had nothing to do with the subsequent one of 5,000 bags of sugar between Luis Fowler and the plaintiff.

"Judge: The court admits it.

"Plaintiff: I take exception.

"Defendant: I offer in evidence a copy of a letter written by Succession of J. Serrallés to Mauricio Fowler on April 9, 1920, and delivered on that same day personally to his brother, Luis Fowler, so that it might serve Luis Fowler as an excuse in connection with the Chemical Co. for not having consummated the deal.

"Plaintiff: The plaintiff objects to the admission of this letter of April 9, 1920. First, because it bears a date subsequent to the closing of all the deals referred to in this action; second, because it is self-serving evidence of the defendant with regard to a person not mentioned in the pleadings; third, because it is not signed; fourth, because it is a copy whose original is not shown to be missing; because it is not a typewritten copy of which an impression was made in a commercial book; because it has not been previously shown that its original was sent by mail.

"Judge: The court admits it.

"Plaintiff: I except.

"The following are literal copies of the documents admitted:

"February 16th, 1920.—Messrs. Sucesión J. Serrallés.—Ponce, Porto Rico.—Gentlemen: We beg to confirm our cables of the 4th, 8th and 10th inst. and acknowledge receipt of your telegrams of the 9th and 12th inst. as per copies attached.

"It is most unfortunate that our cable of the 4th was seriously delayed in transit, as we were led to believe you had this quantity of sugar available for prompt shipment and that you were disposed to accept a price as named by us.

"Further, your cable of the 9th, being undecipherable in the main, complicated matters all the more.

"As advised in our subsequent wire, we had arranged a New York credit in order to avoid all possible delay in shipment so as to take advantage of an order we had in hand which specified embarkment by the 10th inst., at the latest.

"Your last advice states that you are forwarding 2,000 bags on the 24th, consigning same to your agent at New York. May we

ask you, upon receipt of this letter, to kindly cable us your quotation of this lot as it may be possible that we can use it; also specify its color, polarization and character of granulation.

"For your guidance, the market has since become fairly well supplied with Raws and the American refiners are making deliveries in good volume. Local grades are most naturally preferred and importers will consequently have to lower their figures to induce purchase of the foreign product.

"This occasion is taken to advise that we ourselves were the purchaser of the previous lot you had shipped to New York for account of Mr. A. Grand, with whom we are no longer dealing.

"If you have any additional lots, we would appreciate your further offer, firm if possible, for reply to be sent by us within 24 hours after official receipt of your cables.

"Our Mr. Maurice Fally has just arrived in Porto Rico, so as to be better enabled to solicit advantageous offers for us and any assistance you will give him will be highly appreciated.

"Awaiting your further news, we beg to remain,

Yours very truly,
Maxim Chemical Co., Inc.
Per (Signature illegible),
General Manager."

"April 1, 1920.—Mr. Maurice Fally.—San Juan, Porto Rico.— Dear Sir: We have your telegram which reads as follows:

"Confirm purchase 5,000 bags washed sugar 98.5 or better, 125 lbs. bags, shipment first half April, price thirteen dollars fifty per hundred pounds free on board Ponce. Credit opened your favor Royal Bank of Canada $85,000.00 Payment against shipping documents Ponce. Please confirm sale by telegraph.

"Just as soon as the bank has notified us that the credit is subject to our draft we will proceed to make the shipment of the sugar, which is now in our warehouse at the mill.

"Please note that we must have shipping instructions at an early date in order to be sure of securing space for same. In these days when everybody is trying to ship sugar at the same time it is sometimes difficult to secure space for a given date. We will do our best to make shipment within the time specified.

"The price quote above is good for to-day only. If the credit

is not established subject to our draft during the day, the price of sugar will necessarily go up with the market.

Yours very truly,

Sucesión J. Serrallés,

Signed: J. M. Giles.''

"April 9, 1920.—Mr. Maurice Fally.—San Juan, Porto Rico.— Dear Sir: Referring to our letter of April first we regret to advise that since your credit did not arrive from New Orleans to cover purchase made by your purchaser there, as required by the last paragraph of the said letter, and as additional credit to cover the increase in price to 15c failed to arrive by the time specified, nine o'clock this morning, we are obliged to declare the deal off.

Yours very truly,

——— ———.''

## A writing filed by the trial judge recites that:

"In view of the evidence as a whole the court is of the opinion that the law and the facts in this case are in favor of the defendant Succession of J. Serrallés and against the plaintiff Adolfo Nones and that a judgment must be entered dismissing the complaint with costs against the plaintiff.''

## Plaintiff appeals from a judgment of dismissal and insists that—

"The court *a quo* erred in not making and filing a brief statement of the case setting forth the facts and the grounds on which it based its decision.

"2. The said District Court of Ponce erred in admitting over the objection and exception of the plaintiff-appellant a letter and two copies of letters adduced in evidence by the defendant and copied into the transcript of the evidence at pages 94 to 97, as well as those to which the objections and exceptions of the appellant refer as set out on pages 91 to 94 of the said transcript of the evidence, and,

"3. The said lower court erred in not finding that the facts of the complaint had been proved, in considering and weighing the evidence introduced with bias—legally speaking, of course—against the case of the plaintiff-appellant, and in dismissing, as a result of such error, the complaint of the appellant with costs.''

The argument under the first assignment seeks to distinguish the case of *Paganacci* v. *Lebrón,* 24 P. R. R. 743, and insists that in any event certain expressions contained in the opinion were obiter.   But in the instant case it does not appear that any questions as to the omission now complained of was raised in the court below, by motion or otherwise, and appellant does not discuss at all the preliminary question of waiver.   In the circumstances we do not deem it necessary or desirable at this time either to discuss the previous decisions of this court or to enter upon an independent investigation as to whether or not such objections may be made for the first time in this court on appeal.

No question as to the liability or responsibility of the Maxim Chemical Company was involved herein.   The only important or pertinent point about the letter mentioned in the second assignment was that defendant had received such a communication purporting to have been written by the general manager of that concern, and introducing as its representative Mr. Maurice Fally, or Fowler, as he is perhaps more accurately referred to by counsel in the examination of witnesses.   Whether or not the signature of the Maxim Chemical Company was genuine; whether or not the unidentified individual signing as general manager was authorized to subscribe the name of the corporation, and whether or not Fowler was in fact the duly authorized agent and representative of the said corporation, were matters wholly immaterial to any issue in the case, if not (to borrow a phrase from the fourth ground of objection) *res inter alios* in so far as relevant in any particular instance.

An extended investigation along the lines suggested by appellant would have amounted to a profitless waste of time in the trial of issues not raised by the pleadings, and if seriously entered upon by the court could have resulted only in diverting the attention of the trial judge from the fundamental question involved.

The essential proposition to be proved was that defend-- ant was dealing with Fowler as the agent of the Maxim Chemical Company. The letter purporting to come from that corporation introducing Fowler as its representative, received and accepted as authentic and acted upon by defendant, was an evidentiary fact admissible as tending to prove the proposition last above mentioned, whether genuine and authentic or spurious and unauthorized by the corporation.

The admissibility of the copies dated April 1st and April 9th, respectively, is not so clear. It does not seem to have occurred to counsel to establish the fact, if it be a fact, that the Fowlers were absent from the jurisdiction, to say nothing of any showing as to diligence or notice sufficient to excuse the failure to produce the originals. Nor do we find in the brief of appellee any discussion of the question raised under the second assignment.

"Legal process cannot avail to obtain a document held out of the jurisdiction; but four possible forms of effort exist, any one or more of which may be deemed proper by a court before excusing for nonproduction. If the precise whereabouts of the document is unknown, search may be made; if the possessor be ascertained, he may be requested to appear with the document; or he may be requested to deliver the document for use at the trial, or his deposition may be taken with a copy furnished by him annexed to it. No one or more of these efforts could be required as a fixed rule, nor do the courts seems to make any such fixed requirement.

"The rulings fall into three general groups. In the first group, the courts require that an effort of some sort be made, its nature depending more or less on the circumstances of the case. In the second group, the courts, either by express decision or by failing to mention any requirement, excuse the nonproduction although no such effort has been made, the mere fact sufficing that the document is out of the jurisdiction. In the third group, the effort actually made is declared to be sufficient without laying down any rule as to its necessity." 2 Wigmore, p. 787, section 1213.

On the other hand it seems to have been a tacitly accepted

fact that the Fowlers were not available as witnesses at the trial, although our attention has not been called to any direct evidence to show this; and section 24 of our local Law of Evidence reads in part as follows:

"There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: ·

"1. When the original has been lost or destroyed, or is beyond the jurisdiction of the court; in which case proof of such fact must first be made;

"2. When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice."

Both letters were addressed to Maurice Fowler, who, under the view most favorable to plaintiff's theory of the case, was the predecessor in interest as to any possible right or title that could have passed through Louis Fowler to plaintiff, and, if not presumably in plaintiff's possession, or within his knowledge and control, were equally available to him, if not indispensable to an adequate establishment of his claim. In so far as this view of the matter may be tenable, the answer of defendant was perhaps sufficient notice to produce the originals.

In passing we may add that plaintiff's whole case, in so far as the conjectural pre-existence of any option in favor of Louis Fowler is concerned, rested at the time of the incidents now under consideration entirely upon hearsay testimony as to oral statements made by said Louis Fowler.

If any objection had been made to this testimony plaintiff apparently would have been unable to make even the doubtful and unsatisfactory *prima facie* showing actually permitted, as appellee explains in his brief, in order to avoid any semblance of a disposition to prevent a full disclosure of all the facts.

Again, long before the tender of these letters was made, the witness Giles, without objection on the part of the plaintiff, had read the telegram copied in the letter of April 1st,

as well as extracts from the letter itself, including the final paragraph thereof in full; had stated in substance the whole contents, and had said the same was written in answer to the telegram, on being informed by the bank that the money, or cable authorizing the opening of a credit, had not in fact arrived.

We mention these matters merely as indicating the circumstances in which the trial judge overruled the objection as made to the copies in question. As a matter of fact there was no question as to "loss" of the originals and therefore no bases for an objection on this ground. Moreover, even in the objection as made to the copy dated April 9th, there is no specification of the omission to show any effort to locate either of the Fowlers, or to procure from them the original. Had the objection been somewhat broader, covering the failure to account for the absence of the original in any way, perhaps such a specification would have been unnecessary. But when the defendant complained only of the lack of any showing as to loss, the court below was under no obligation of its own motion to raise the further question as to the whereabouts of the absent brothers or want of diligence on the part of defendant in ascertaining such whereabouts and obtaining from them the originals in their possession. Moreover, in the case of the copy first offered, the only one of any particular importance in the case, there was no objection whatever upon either of the grounds last above mentioned. And it is fair to assume that, if proper objection had been made, defendant thereupon would have made some showing as to diligence, or else would have pointed to some fact already before the court tending to excuse nonproduction of the originals; in which event the trial judge would have had a broad discretion in applying the rule to the circumstance of this particular case, and only in the event of a clear abuse of that power would we be justified in reversing the judgment.

There seems to be a general tendency on the part of the bar to regard the words "self-serving declaration" either as a phrase to conjure with, or else as the stereotyped expression of some settled principle of the law of evidence too elementary to demand serious discussion. The recent case of *Rullan* v. *Vázquez, ante,* p. 376, is an example.

That a self-serving declaration is not admissible as falling within the exception to the hearsay rule covering a statement or "admission against interest," is perfectly plain. But it does not follow that a letter forming part of a correspondence containing the terms of a contract must be excluded merely because it was written by one of the parties to such contract and to subsequent litigation growing out of the same, and tends to support his theory of the case.

"There is no principle of evidence especially excluding 'self-serving' statements by an accused or by any one else. The Hearsay rule excludes all extrajudicial assertions; and therefore the only inquiry need be whether such assertions are covered by some Exception, to that rule, or whether utterances amenable to it are evidential in any indirect way apart from their assertive value." 3 Wigmore, 768, section 1765.

Section 84 of the Law of Evidence reads as follows:

"Where an impression of a letter is taken in a letter-press copy-book before the mailing of the original, such letter-press copy-book must be deemed an original equally with the letter so copied, and may be read in evidence upon proof of the due mailing of the letter so copied."

But there is no intimation of any intention on the part of the legislator to exclude carbon copies of letters not copied into the letter-press nor sent by mail, but delivered by the writer to the person addressed or his agent.

It is true that the letter of April 9th was written on the day following the alleged assignment by Louis Fowler to plaintiff. But there was also testimony to show that Louis Fowler, on the morning of the 9th, about 9 o'clock,

insisted that the delayed cable would arrive within a few minutes and begged for a further extension of fifteen or thirty minutes, which was refused; that the cable was in fact received shortly after 10 o'clock, and that Fowler thereupon requested from defendant the letter in question for the purpose of explaining to his or his brother's principal, the Maxim Chemical Company, and its client in New Orleans why the sugar was not delivered.

The mere suggestion of the lapse of twenty-four hours between the refusal to deliver the sugar to plaintiff and the writing of the letter does not, in the light of these circumstances, suffice to establish the proposition that the court erred in admitting the copy last above mentioned, and the error, if any, would seem to have been harmless.

With reference to the third assignment it will suffice to say that a careful examination of the record discloses neither prejudice nor manifest error on the part of the court below in weighing the evidence.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.